**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CHARLETTE RUBIO, on behalf of
herself and those similarly situated,

      Plaintiff,

vs.                                         Case No. 6:11-cv-1753-Orl-37TBS

FUJI SUSHI & TEPPANI, INC.; NABANI
D. HOWLANDER; WAHIDUR R. KAHN;
and SHARIFA AKTER,

      Defendants.

**ORDER**

This cause is before the Court on the following:

1. Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Doc. 22), filed September 28, 2012;

2. Defendants' Fuji Sushi & Tappani, Inc., Nabani D. Howlander, Wahidur R. Kahn, and Sharifa Akterm Memorandum of Law in Opposition to Plaintiff's Motion For Summary Judgment (Doc. 26), filed November 9, 2012; and

3. Plaintiff's Reply to Defendants' Response to Plaintiff's Motion Summary Judgment (Doc. 31), filed December 4, 2012.

Upon consideration, the Court hereby grants in part and denies in part Plaintiff's motion, as set forth below.

**BACKGROUND**

Plaintiff Charlette Rubio was a server at a restaurant operated by Defendant Fuji Sushi & Teppani, Inc. ("Fuji"). (Doc. 1, ¶ 23; Doc. 12, ¶ 23.) Plaintiff alleges that Defendant Nabani D. Howlander was the President of Fuji, Defendant Wahidur R. Kahn

was the Vice President, and Defendant Sharifa Akter was the Director, and that all three individuals were acting managers of the restaurant. (Doc. 1, ¶¶ 5–7.) Plaintiff alleges that she and similarly situated individuals (collectively, "Plaintiffs")[1] were subject to illegal tip deductions. (*Id.* ¶ 37.) Specifically, Plaintiff alleges that they were paid an hourly rate plus tips, and that Defendants retained tips to pay for various expenses and pooled tips among both tipped and non-tipped employees in violation of the Fair Labor Standards Act ("FLSA"). (*Id.* ¶¶ 24–32.) Plaintiff also alleges that Defendants reduced her hours after they received a letter from her attorney. (*Id.* ¶ 63.)

Plaintiff brought this action for: (1) recovery of minimum wages under the FLSA; (2) retaliation in violation of the FLSA; and (3) declaratory relief. (Id. ¶¶ 45–82.) Plaintiff moved for partial summary judgment on the grounds that: (1) Fuji violated the FLSA by requiring the class to participate in an invalid tip pool; (2) the class is entitled to liquidated damages under the FLSA; and (3) Defendants Howlander and Kahn are individually liable for the alleged FLSA violations. (Doc. 22, pp. 7–13.) Defendants opposed. (Doc. 26.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality of the facts depends on the substantive law applicable to the case. *See id.* To defeat a motion for

---

[1] Richard Masayori, Somnang Suong, Phong Nguyen, and Kati Pennington have filed notices with this Court of their consent to join the collective action. (Docs. 5-1, 5-2, 13-2, 13-3.)

2

summary judgment, the nonmoving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citation omitted).

## DISCUSSION

### 1. Invalid Tip Pool

Under the FLSA, an employer must pay its employee a minimum wage. *See* 29 U.S.C. § 206(a). That wage may include the employee's tips. *See id.* § 203(m). That is, an employer may pay an employee a cash wage below the minimum wage (but above $2.13, *see* 29 C.F.R. § 531.50), so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a "tip credit." 29 U.S.C. § 203(m). The employer may only take a "tip credit" toward the minimum wage if the employer informs the employee of the FLSA's tip provisions. *Id.* Additionally, if an employee receives tips pursuant to a tip pooling system, the tip pool may only include customarily tipped employees. *Id.*

Courts have focused on the extent of an employee's customer interaction as a significant factor in determining whether the employee is a customarily tipped employee. *See, e.g.*, *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1370 (S.D. Fla. 2009); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1352, 1359 (S.D. Fla. 2009); *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301–02 (6th Cir. 1998). A tipped employee is defined by the FLSA as an "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C.

3

§ 203(t).

Plaintiffs contend that management's alleged retention of a portion of the tips and the inclusion of kitchen chefs in the tip pool invalidated the tip pool. (Doc. 22, pp. 8–9.)

### a. Retention of Tips by Management

Plaintiffs argue that Fuji illegally retained a portion of its servers' tips to cover accidents that happen on the job. (*Id.* at. 9.) Record evidence shows that Fuji did have a policy that money from the tip pool would go towards replacing broken glass and cleaning napkins. (Doc. 22-3, p. 3.) However, a factual dispute exists as to whether any tip money was actually used in this way. (*See* Docs. 27-1, 28-1, Howlander Dep. 51:6–18, 92:2–93:6, 130:2–4 (recognizing that a written policy existed but asserting that money was never actually taken from the tip pool pursuant to the policy)). As such, summary judgment is precluded on this issue.

### b. Participation of Kitchen Chefs in Tip Pool

There are no factual disputes regarding the inclusion of kitchen chefs in the tipping pool. Servers received a cash wage below the minimum wage, supplemented by tips pursuant to a tip-pooling system. (*Id.* at 26:9–27:14.) Record evidence establishes that kitchen chefs, among other employees, were included in the tip pool. (*Id.* at 30:19–23, 31:13–17, 32:3–8; Doc. 22-2.) "Where an employer takes the tip credit in connection with a tip pooling arrangement, the application of the credit will only be valid so long as the pool includes only those employees who customarily and regularly receive tips. . . . The requirements of the tip credit are strictly construed even if . . . [plaintiffs] actually earned more than minimum wage for every shift they worked . . . ." *Garcia v. La Revise Assocs. LLC*, No. 08-cv-9356, 2011 WL 135009, at *5–6 (S.D.N.Y. Jan. 13, 2011) (internal quotation marks and citations omitted). The question for the Court is whether

the kitchen chefs are "tipped employees" under the FLSA; if they are not, the tip pool was invalid and Defendants did not meet their obligations under the FLSA.

Legislative history and Department of Labor interpretations demonstrate that kitchen chefs do not customarily and regularly receive tips. In a Senate Report on the 1974 amendments to the FLSA, the Senate Committee on Labor and Public Welfare explained that "the employer will lose the benefit of [taking a tip credit] if tipped employees are required to share tips with employees who do not customarily and regularly receive tips—*e.g.*, janitors, dishwashers, *chefs*, laundry room attendants, etc." S. Rep. No. 93-690, at 43 (1974) (emphasis added). The Department of Labor Field Operations Handbook lists "chefs or cooks" as "occupations that would . . . not be eligible to participate" in a tip pooling arrangement. Dep't of Labor Field Operations Handbook § 30d04(c) (1988). Courts have found that employees like kitchen chefs are not "tipped employees" under the FLSA. *See, e.g.*, *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 735 (W.D. Tex. 2010) (holding that preparation cooks invalidated tip pool because they engaged in minimal customer interaction); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550 (6th Cir. 1999) (concluding that lower court's determination that salad mixers did not engage in a customarily tipped occupation was not clearly erroneous).

In this case, the kitchen chefs worked inside the kitchen preparing food. (Howlander Dep. 43:7–24.) They engaged with customers only when a customer had a complaint or asked to compliment the chef. (*Id.* at 43:25–44:12.) Defendants have not produced any evidence to the contrary, and these duties do not compare to those of servers, buspersons, foodrunners, hosts, maître d's, or even sushi chefs, who all interact with customers on a much more frequent basis. *See Dole v. Cont'l Cuisine, Inc.*, 751 F. Supp. 799, 800–01 (E.D. Ark. 1990) (maître d's); *Kilgore v. Outback Steakhouse*

*of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir. 1998) (hosts); *Santana v. RCSH Operations, LLC*, No. 10-cv-61376, 2012 WL 463822, at *3 (S.D. Fla. Feb. 13, 2012) (foodrunners); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1371 (2009) (denying a defendant restaurant's summary judgment motion on the issue of whether sushi chefs could lawfully participate in a tip pool). It was not the kitchen chefs' job to engage with customers, but to prepare food in the kitchen, away from customers; whatever rare and unusual interaction the kitchen chefs had with customers was incidental. The kitchen chefs did not provide "service" to customers in a way that warranted a share of the gratuity left by customers.

Defendants do not proffer any evidence from which the Court can conclude that the kitchen chefs had more than minimal customer interaction. Thus, in light of the persuasive authority cited above, the Court concludes that the kitchen chefs are not "tipped employees" under the FLSA. Because the unrebutted record evidence demonstrates that the kitchen chefs were included in the tip pool, Plaintiffs are entitled to summary judgment on this issue. Fuji violated the FLSA by including the kitchen chefs in the tip pool.[2]

**2. Liquidated Damages**

Where there has been a finding that an employer violated the FLSA, a district court "generally must award a plaintiff liquidated damages that are equal in amount to actual damages." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008); *see* 29 U.S.C. § 216(b). However, the law "provides a safe harbor for an employer who can establish that it acted in good faith and under the reasonable belief that it was in compliance with the FLSA." *Rodriguez*, 518 F.3d at 1272 (citing 29 U.S.C.

---

[2] Damages will be determined at trial.

6

§ 260). To satisfy the good faith requirement, an employer must show that it acted in subjective good faith and had an objectively reasonable basis for believing that its conduct conformed with the FLSA. *Id.*; 29 C.F.R. § 790.22(b). The determinations of subjective and objective good faith are mixed questions of law and fact. 29 C.F.R. § 790.22(c). If an employer proves good faith, a court may either award no liquidated damages or a reduced amount. 29 U.S.C. § 260.

Here, Defendant Nabani Howlander testified that: (1) his attorney was given a copy of the tip-pooling arrangement, though the attorney did not draft the policy (Howlander Dep. 97:15–19); (2) he did not consult with an attorney about the way he paid his servers (*id.* at 98:14–17, 107:8–9); and (3) he did consult an accountant regarding the tip pool, and the accountant told him that taking a portion of the tips from servers and giving it to kitchen chefs was legal (*id.* at 99:1–5, 101:9–21). Howlander testified that he trusted the accountant because the accountant told him that he "knows the labor laws." (*Id.* at 101:22–102:16.) He also testified that he asked several nearby restaurants about their practices. (*Id.* at 102:23–104:12.)

The subjective component of the good faith safe harbor requires "an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." *Dybach v. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991) (internal quotation marks and citation omitted). Howlander's testimony suggests that he (and by extension, Fuji) acted in subjective good faith when adopting the policy of including kitchen chefs in the tip pool, as he consulted an accountant and other local businesses regarding their practices. While Howlander did not consult an attorney or the Department of Labor, he thought that his accountant was informed about labor law. This evidence shows that Fuji actually believed that it was in compliance with the FLSA, pursuant to the subjective

component of the good faith inquiry.

The objective component imposes "some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979) (citation omitted) (further noting that "[a]pathetic ignorance is never the basis of a reasonable belief"). Contrary to Plaintiffs' claim that "Defendant admits that it did nothing . . . prior to the filing of this lawsuit to inquire if its payroll practices were in compliance with the FLSA," Fuji did, in fact, consult with an accountant who represented that he had knowledge of labor law. While the word of an accountant does not necessarily equate to conformity with the FLSA, the evidence shows that Fuji did take affirmative, arguably reasonable steps to investigate its obligations under the FLSA. At this stage, the Court cannot conclude that Fuji did not act in good faith. As such, summary judgment is precluded on this issue.

### 3. Individual Liability

An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To determine whether an individual is an employer under the FLSA, and thus individually liable for an FLSA violation, a court must examine the "economic reality" of the relationship between the parties. *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). Factors include whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citations omitted). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). Whether an individual is an employer

within the meaning of the FLSA "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotation marks and citation omitted).

Plaintiffs contend that Defendants Nabani Howlander and Wahidur Kahn are individually liable for any FLSA violations committed at Fuji. (Doc. 22, pp. 11–13.) The Court finds that Howlander had sufficient control over the terms and conditions of employment at Fuji to be held individually liable. He was the President of Fuji. (Howlander Dep. 7:4–9.) Howlander testified that he was responsible for all of the operations at Fuji; some individuals assisted him, but he was "responsible for everything." (*Id.* at 17:7–9; *see also id.* at 14:7–10, 15:5–6.) He hired and fired employees (*id.* at 14:18–19), personally terminated Plaintiff Charlette Rubio's employment (*id.* at 80:7–9), trained employees (*id.* at 14:20–24), controlled employee work schedules (*id.* at 15:25–16:1, 21:13–16, 22:8–11), worked with Fuji's accountant who dealt with payroll issues (*id.* at 15:16–20), kept pay records (*id.* at 23:13–24:1), and was responsible for making sure that all employees received minimum wage (*id.* at 65:13–17, 67:3–4). Thus, the record is clear that Howlander took an active role in the day-to-day operation of the restaurant. Defendants do not controvert Howlander's control over Fuji's operation (Doc. 26, p. 6) and do not raise any factual dispute on this issue. Accordingly, Plaintiffs are entitled to summary judgment on this issue. Howlander is jointly and severally liable for any FLSA violations committed by Fuji.

However, Plaintiffs have not shown on the current record that Kahn is individually liable under the FLSA. Kahn's responsibilities do not rise to the same level of control exhibited by Howlander. He could not hire or fire employees on his own (Howlander

Dep. 41:2–8), nor could he schedule employees' work shifts (*id.* at 41:9–10). The current record does not support that Kahn is an "employer" within the meaning of the FLSA. As such, summary judgment is precluded on this issue.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Doc. 22) is **GRANTED IN PART** (as to the FLSA violation for the participation of kitchen chefs in the tip pool and Nabani Howlander's individual liability) and **DENIED IN PART** (as to the alleged FLSA violation for retention of tips by management, liquidated damages, and Wahidur Kahn's individual liability). **DONE AND ORDERED** in Chambers in Orlando, Florida, on January 22, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record